ALLAN E. ANDERSON (SBN 133672)
ARNOLD E. SKLAR (SBN 051595)
ALAN J. HART (SBN 278645)
**ROPERS, MAJESKI, KOHN & BENTLEY**
515 South Flower Street, Suite 1100
Los Angeles, California 90071-2213
Telephone: (213) 312-2000
Facsimile: (213) 312-2001
Email: aanderson@rmkb.com
Email: asklar@rmkb.com
Email: ahart@rmkb.com

Attorneys for Defendants/Counter-Claimants
UNDER ARMOUR, INC.; FINISH LINE, INC.; FOOT LOCKER, INC.; NORDSTROM, INC.; DICK'S SPORTING GOODS, INC.; CHAMPS SPORTS; SPORT CHALET, INC.; AMAZON.COM, INC.; ZAPPOS IP, INC.; BACKCOUNTRY.COM, INC.; ROGAN'S SHOES, INC.; ROAD RUNNER SPORTS RETAIL, INC.; MONKEYSPORTS, INC.; HOLABIRD SPORTS, LLC; EASTBAY, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAVITY DEFYER CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNDER ARMOUR, INC., et al.,<br><br>Defendants. | CASE NO. CV13-01842 JAK (JCGx)<br><br>Magistrate Judge Jay C. Gandhi<br><br>*DISCOVERY MATTER*<br><br>**JOINT STIPULATION RE: MOTION TO COMPEL RESPONSES TO DEFENDANTS' REQUESTS FOR ADMISSION AND INTERROGATORIES** |
| UNDER ARMOUR, INC., et al.,<br><br>Counter-Claimants,<br><br>v.<br><br>GRAVITY DEFYER CORPORATION, a California corporation,<br><br>Counter-Defendant. | DATE: September 10, 2013<br>TIME: 2:00 p.m.<br>PLACE: Courtroom A<br>       8th Floor—Spring Street<br><br>Discovery Cut-Off: 1/31/14<br>Pre-Trial Conf: 6/30/14<br>Trial Date: 7/1514<br><br>**Complaint Filed:** March 14, 2013 |

RC1/7054578.3/KTK

JOINT STIPULATION RE REQUESTS FOR ADMISSION AND INTERROGATORIES

**TABLE OF CONTENTS**

Page

INTRODUCTIONS: ...................................................................................................1

    Under Armour's Introduction ..........................................................................1

    Gravity Defyer's Introduction .........................................................................3

UNDER ARMOUR'S REQUESTS FOR ADMISSION TO GRAVITY ...............5

    REQUEST FOR ADMISSION NO. 1 ............................................................6

    RESPONSE TO REQUEST FOR ADMISSION NO. 1 ................................6

        Under Armour's position .......................................................................6

        Gravity's position ...................................................................................6

UNDER ARMOUR'S INTERROGATORIES TO GRAVITY ..............................7

    INTERROGATORY NO. 1 ............................................................................7

    RESPONSE TO INTERROGATORY NO. 1 .................................................7

        Under Armour's position .......................................................................7

        Gravity's position ...................................................................................9

    INTERROGATORY NO. 6 ............................................................................9

    RESPONSE TO INTERROGATORY NO. 6 .................................................9

        Under Armour's position .......................................................................9

        Gravity's position .................................................................................10

    INTERROGATORY NO. 7 ..........................................................................10

    RESPONSE TO INTERROGATORY NO. 7 ...............................................10

        Under Armour's position .....................................................................11

        Gravity's position .................................................................................11

    INTERROGATORY NO. 8 ..........................................................................12

    RESPONSE TO INTERROGATORY NO. 8 ...............................................13

        Under Armour's position .....................................................................13

        Gravity's position .................................................................................14

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Plaintiff GRAVITY DEFYER CORPORATION ("Gravity") and defendant UNDER ARMOUR, INC. ("Under Armour") submit the following Joint Stipulation pursuant to Local Rule 37-2, in connection with Under Armour's Motion to Compel Responses to Request for Admission and Interrogatories.

## INTRODUCTIONS

**Under Armour's Introduction:**

Gravity claims the trademark "G Defy." One of Under Armour's registered trademarks is MICRO G®. Under Armour began selling a footwear product of the name UA MICRO G® DEFY, often with additional wording depending on the particular model of the footwear. Variations that incorporate that or similar wording and/or symbols appeared on websites not controlled by Under Armour. For example, on its own web site Under Armour uses UA MICRO G® DEFY without Under Armour's ⋈ symbol; on other websites, the federally registered mark UNDER AMROUR may be included as part of the name or product description, and the mark "UA" might not appear; on other websites, both of the federally registered marks "UNDER ARMOUR" and "UA" may be included in the product name or product description, and the ⋈ symbol may also appear.

Gravity has sued Under Armour and 14 retailers for trademark infringement. The sin quo non of trademark infringement is a likelihood of confusion. In this case, according to Gravity's complaint and other papers filed to date, the nature of the alleged likelihood of confusion is from internet search results. Gravity complains that when the term "g defy" was entered in the search box in a search engine, such as Google, Bing, and Yahoo, results included the Under Armour product.

Defendants counterclaimed to cancel Gravity's trademarks based on false advertising. That false advertising is also a basis of the affirmative defenses of estoppel and unclean hands.

///

The discovery that is the subject of this Joint Stipulation and motion relate to both Gravity's infringement claim against the Defendants and Under Armour's counter claims. Though not at the time specifically directed to damages (Defendants had filed a motion to bifurcate damages), some of the discovery is also relevant to damages, and bifurcation has now been denied.

Gravity's objectionable responses are symptomatic of its failure to comply with the Federal Rules. Since the parties' planning conference on May 17, 2013, Gravity has failed to comply with Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure to provide a computation of each category of damage it claims.

On July 11, 2013 (a Thursday) Under Armour sent a letter pursuant to Local Rule 37-1 to Gravity counsel requesting a conference within ten days, as required by the Local Rule. Counsel was known to be out of town on vacation, so the letter was sent by regular mail so that it would more-or-less coincide with his expected return by the following Monday. It is presumed received. During the next ten days Gravity did not respond—at all: it did not say when it would meet, it did not offer an excuse why it could not meet within the time required by local rule, it did not represent that it would fully respond to the discovery.

If it need be said, Gravity did not meet and confer within the ten days required by Local Rule 37-1. (Even if the ten days to meet is counted from counsel's return, on or about July 15, there was no response and, most importantly, no meeting.)

Undoubtedly Gravity will attempt to lay blame on Under Armour for not reminding him or chasing after him to confer, or some other reason. It should not be incumbent on one proceeding under Local Rule 37-1 to hold the opponent's hand and make him/her comply with the rules of this court.

Since there was no meet and confer, Under Armour had no opportunity to

make a proposal to resolve each issue without court intervention.

///

The court has set an "aggressive" schedule for this case—non-expert discovery presently closes January 31, 2014. Delay by Gravity cannot be tolerated.

**Gravity Defyer's Introduction:**

Plaintiff owns the federally registered trademarks G DEFY® (in use since 2009) and GRAVITY DEFYER® (in use since 2006) for specialty shoes with springs built into trampoline-like heels. Plaintiff uses print advertising to get customers to type its marks into search engines to find its website for online sales.

Last year Under Armour, and through its many retailers, began selling shoes with special impact-resistant soles under the brand name "Micro G Defy." The result was, for several months, when customers typed "G Defy" into search engines, numerous Micro G Defy shoes came up and Gravity Defyer was virtually invisible on the Internet. When the lawsuit was filed and after conferring on a preliminary injunction motion, Defendants agreed to phase out all use of "G Defy" in their business affairs. This case is now primarily about Plaintiff being reasonably compensated for the lost traffic and lost sales.

That Under Armour included its house mark does not support them escaping liability for the infringement which occurred. Trademark law is otherwise. Adding the house mark may merely suggest to customers that Plaintiff licensed Defendant or that the parties are affiliated in some other way.[1] And Defendants' counterclaim

---

[1] *Trak, Inc. v. Benner Ski KG*, 475 F. Supp. 1076 (D. Mass. 1979) (Junior user's addition of its house mark did not prevent likely confusion: "The presence of 'Benner' on the ski might suggest to the consumer that Benner somehow is licensed to do business by Trak."); *Banff, Ltd. v. Federated Dep't (23-22-) Stores*, 638 F. Supp. 552 (S.D.N.Y. 1986) *aff'd in part and rev'd in part, remanded*, 841 F. 2d 486 (2d Cir. 1988) (defendant's use of its company name does not generally excuse infringement and might even increase confusion by linking defendant's house mark to plaintiff's good will, since consumers might think that there was a licensing agreement between the parties); *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F. 2d 1079 (7th Cir. 1988) (argument that addition of defendant's house mark prevents likely confusion is a "smoke screen" and a "poor excuse for blatant infringement because customers are likely to think

to cancel Plaintiff's registrations based on alleged false advertising fails to state a claim.

Defendants brought a motion to bifurcate liability and damages, claiming Plaintiff was unlikely to succeed on liability such that damages calculations wouldn't be necessary for the several Defendants, all being represented by Ropers Majeski. Based thereon, after being granted multiple extensions, on July 3rd Defendants' attorneys refused to properly respond to Plaintiff's existing first discovery requests (served May 17, 2013) on all interrogatories and document requests related to damages. For example:

> Insofar as this request asked for a number of units, Defendant objects to this Interrogatory as premature. A motion to bifurcate infringement and damages, including for discovery, is filed. Defendant will respond at an appropriate time after the court rules on the motion to bifurcate, and then only after a mutually acceptable protective order is entered.

The Protective Order was entered July 2nd.

On July 22, 2013 the Court denied Defendants' bifurcation motion, finding it was inefficient to proceed in the manner sought by Defendants, potentially requiring two discoveries and two trials. Despite the motion being denied weeks ago, Defendants have yet to provide proper discovery requests or responsive documents, and hence Plaintiff has sent Rule 37 letters to Defendants and requested a meet-and-confer.

On July 25th the parties also held an early mediation at JAMS before retired Judge Schiavelli which was unsuccessful. And the next day following the failed

---

that the plaintiff had licensed, approved or otherwise authorized the defendant's use of the mark"); *In re Toshiba Medical Systems Corporation,* 91 U.S.P.Q. 2d 1266, 2009 WL 1745898 (T.T.A.B. 2009) (VANTAGE TITAN for medical MRI diagnostic apparatus is likely to cause confusion with previously registered TITAN for medical ultrasound device. Addition of a house mark VANTAGE would be likely to convey the message that this was another product from TITAN).

mediation, Defendants reneged on their agreement to stipulate to an amended complaint, and refused to agree to hear the motion for leave before the next available hearing date of October 10th. Hence Plaintiff was forced to file a motion for leave to amend and an ex-parte application, which remain pending. The reason Defendants admit they "reneged" is because Plaintiff was not dismissing small-volume Defendants fast enough, despite not having received verified interrogatory responses as to their sales. The second-amended complaint adds a cause of action for infringement of common law, unregistered marks (if the registrations are cancelled) and deletes the prayer for relief of an injunction (given Defendants phased out use of G DEFY).

At the scheduling conference, the same day the bifurcation motion was denied, Defendants proposed a schedule with the trial about a year after the date proposed by Plaintiff. Defendants' schedule was rejected and instead Plaintiff's schedule was adopted for the case. While much of the above may be considered unnecessary background, Plaintiff includes the same in response to the lengthy introduction submitted by Defendants.

This joint stipulation concerns Defendants' complaints about select discovery responses made by Plaintiff. Given the bifurcation motion and the mediation, Plaintiff's attorneys were unable to timely respond to their July 11th letter, and hence on July 29th, immediately after the mediation, received the joint stipulation for input. As per below, Defendants' make no showing warranting an order to compel discovery. Plaintiff's positions are reasonable, and where there is any question a supplemental response is offered.

### UNDER ARMOUR'S REQUESTS FOR ADMISSION TO GRAVITY

Under Armour is moving pursuant to FRCP Rule 36 for a determination that the objections to these requests are insufficient and that the following matters be deemed admitted.

**REQUEST FOR ADMISSION NO. 1:**

Admit that YOUR G DEFY shoes are not good for running.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Gravity Defyer objects to this request as vague and ambiguous, in that the meaning of the term "good" is unclear and undefined. Accordingly, Gravity Defyer denies the request.

**Under Armour's position:**

The word "good" is common and has a common understanding. It is defined in Webster's New Collegiate Dictionary 10th Edition: "of a favorable character." On the remote chance that Gravity does not understand the meaning of "good," Gravity no doubt has a dictionary readily available (either online or in print).

Gravity's sales are conducted on the internet, and it is complaining based on what it claims to be the results of matter on the internet, so it can be said with a fair amount of confidence that Gravity has an online dictionary readily available.

Further, document bates numbered UA00093 includes an internet post by one who identified itself/himself/herself as "Gdefy" and states that the "gdefy shoes are not great running shoes." That post includes a URL www.gdefy.com. If Gdefy knows that the shoes are not great, it knows the meaning of "good" ("good" is not as favorable as "great") and whether the shoes are or are not good for running.

Further, the president of Gravity is, on information and belief, the founder or other executive of the Impact Research Technology Group. According to Mr. Elnekaveh's website biography, he heads a team of experts and invented the Gravity Defyer footwear (the subject of the disputed trademark). He surely knows if his own product is good for running.

**Gravity's position:**

Plaintiff stands on the objection and denial. The term "good" is a matter of opinion, not fact. Should a supplemental response be required to clear up any

ambiguity as to the response, Plaintiff is prepared to make the same in denying the request. Given a runner may sprint on the balls of his or her feet, having springs and a special heel design will not make the shoes bad for running.

Any added weight for the springs is negligible. Plaintiff believes the remainder of the shoe including the forward portion of the sole is as good or better than Defendants' shoes. The special heels may come into effect for slower running such as jogging, and for walking. And this case is about trademark infringement and damages, not which party has the best shoes.

## UNDER ARMOUR'S INTERROGATORIES TO GRAVITY

Under Armour is moving to compel Gravity to respond, fully and completely to the following interrogatories:

### INTERROGATORY NO. 1:

Identify each and every PERSON (whether a consumer or a reseller) that has bought any shoes which are associated with the G DEFY mark.

### RESPONSE TO INTERROGATORY NO. 1:

Gravity Defyer objects to this interrogatory as seeking irrelevant information with little or no probative value. Gravity Defyer objects to this interrogatory as seeking highly-confidential, trade secret information of Plaintiff, and the risk of competitive harm to Plaintiff is great. Subject to and without waiving said objection, upon a suitable protective order being entered, Gravity Defyer will produce confidential documents identifying its resellers or distributors.

**Under Armour's Position:**

Gravity purported to restate Interrogatory No. 1, but what it wrote was not the Interrogatory No. 1 that was served. It appears to be a response, but to what? This is a matter that could easily have been resolved by a simple return phone call, let alone a conference per Local Rule 37-1, but Gravity counsel ignored Local Rule

37-1 and did not bother to meet and confer as required, or even to send a simple email message to clear it up.

The response that is identifiable as a response to Interrogatory No. 1 evades the most important part of the interrogatory—consumers. Their identity is relevant to contact them to find out how they went to the Gravity web site to purchase—whether through paid search, natural search, no search at all, etc.

*A protective order is in place.* The objection for confidential information may be summarily disregarded. The protective order was entered on or about July 1, 2013. Gravity's response to this interrogatory is dated July 3, 2013—it may have prepared the response before notice that the protective order was entered, but it has not supplemented its response in this regard. Had Gravity counsel conferred as required by Local Rule 37-1 Defendants would have pointed that out.

If Gravity is claiming damage from loss of repeat sales—which it appears from its categories of damage it might be claiming—the purchasers who made repeat sales is most certainly relevant, and it includes consumers. In order to track repeat sales, the identity of each purchaser is necessary. Defendants had not requested sales by each individual, but now that bifurcation is denied Defendants are requesting that information.

The identity of each consumer that purchased and did not make repeat purchases is also calculated to lead to admissible evidence that contradicts a claim for lost repeat sales.

The information is also calculated to lead to admissible evidence that Gravity's claims are false. It is also calculated to lead to admissible evidence that consumers did not repurchase even though not confused.

Without the identities of all purchasers, we cannot interview purchasers to obtain relevant information. "Identify" is a defined term: provide the PERSON's name, last known business and residence address and last known business and

residence telephone numbers and their relationship to you.

**Gravity's Position:**

Gravity Defyer has a customer list which includes multiple hundreds of thousands of names. Gravity Defyer does not want its valuable customer list misappropriated, or its customers harassed by Defendants. Gravity Defyer has data as to its repeat customer rate. Defendants can verify same by sampling the data base. Undoubtedly Defendants have much larger customer databases, in the millions of customers. It is very unlikely Defendants will be willing to turn over their customer information to Plaintiff, for example, to find out if they were confused, or may have thought that Gravity Defyer and Defendants had some sort of relationship since Defendants were selling G Defy shoes. As to proving confusion or not, in trademark cases that is typically done by mall surveys or the like, and Defendants have indicated they intend to employ such a survey expert. Defendants have stated no grounds to entitle them to Plaintiff's entire customer list.

**INTERROGATORY NO. 6:**

State in full and complete detail, with the utmost particularity the circumstances in which YOU first became aware of the use by Under Armour of its Micro G® trademark. For the avoidance of doubt, "full and complete detail, with the utmost particularity" includes, without limitation, when YOU first became aware, how YOU became aware, and the IDENTITY of each PERSON employed by or otherwise associated with YOU who first became aware.

**RESPONSE TO INTERROGATORY NO. 6:**

Gravity Defyer objects to this interrogatory as seeking irrelevant information, in that Under Armour's Micro G® mark is not at issue in this litigation.

**Under Armour's Position:**

Under Armour agrees that its MICRO G mark is not an issue in this litigation. But Gravity keeps making it an issue. The interrogatory simply asks

when Gravity became aware of that mark.

**Gravity's Position:**

Again, Gravity Defyer asserts the information sought is not relevant or discoverable. But upon further consideration, and to avoid any needless dispute, Gravity is willing to serve a supplemental interrogatory response, stating it first

///

became aware of the Micro G mark and that it was registered on or about March 8, 2013.

**INTERROGATORY NO. 7:**

If YOU are aware of any COMMUNICATION, whether directly to you or on the internet or in any form of social media, from a PERSON who has expressed a fact or an opinion that is contrary to YOUR claims, slogans or testimonials about the nature, characteristics or quality of the good(s) in connection with which the G DEFY mark is used, state in full and complete detail, with the utmost particularity all information regarding each communication. For the avoidance of doubt, "full and complete detail, with the utmost particularity" includes (without limitation) the substance of the communication, the IDENTITY of the PERSON making the communication, when the communication was made, any response (whether written, oral or electronic) YOU made to the communication, and the IDENTITY of each PERSON having knowledge of the communication and response.

**RESPONSE TO INTERROGATORY NO. 7:**

Gravity Defyer objects to this interrogatory as overly broad in that it is unlimited as to time. Gravity Defyer also objects to the extent any of the information sought is protected from compelled disclosure by attorney-client or work product privileges. Within the past three (3) years, Gravity Defyer and every company has negative statements made about it on the internet, but we can in no way substantiate the authenticity or motives behind those comments and the people

who make them, but we do of course realize that they exist.

**Under Armour's Position:**

The interrogatory is not overbroad as to time. According to the PTO web site, YOUR first use was in March, 2009, so the time is no farther back than that.

But the bigger point is that the time period does not matter. In fact, the older

/ / /

/ / /

the information the more relevant and appropriate it. One does not gain trademark rights from an unlawful use of the mark. *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. Cal. 2007).

The earlier Gravity began its unlawful use—false advertising—the less rights it has and the greater its unclean hands. The question relates to Gravity's claims about its shoe, regardless of when the claim was made. The information (even 4 year old information) is likely to lead to admissible evidence that the claims are false. All communications that express anything contrary to its claims about the G DEFY shoe are relevant and appropriate. There is no objection for relevance.

The interrogatory does not ask Gravity to substantiate or authenticate or identify the motives behind the comment or the people that made them. That objection is a "strawman." The information requested may lead to admissible evidence that contradict Gravity's claim that the shoe is comfortable and/or relieves pain. It may also lead to admissible evidence why people did not buy the Gravity product. *Gravity acknowledges such comments exist*; it can and should answer the interrogatory, fully and completely.

An objection for attorney-client and work-product privilege is disingenuous. The question is regarding communications from and to third parties. Even if an attorney communicated back to the third party, the communication is not privileged.

**Gravity's Position:**

Whether the shoe is comfortable or not will always be a matter of opinion. If the shoes were uncomfortable, Gravity Defyer's sales would not be growing as it was, except during the time Defendants infringed its G DEFY® trademark. Gravity Defyer does not advertise that its shoes eliminate pain although some pain relief may be experienced by wearers given the shock-absorbing sole. As per Gravity's objection, there are many reviews, both pro and con, on the Internet accessible to all. To identify those reviews and the writers would be a huge administrative task and an impossible one given most of the reviews are posted anonymously and/or the reviewer's identity is inaccessible to Gravity Defyer. And there will always be differences of opinion. Each person will have a different experience wearing the shoes. Sizing may be incorrect. Some will engage in running but for most they will be walking shoes. If Under Armour finds twenty persons who didn't like the shoes, and Gravity Defyer finds forty persons who loved the shoes, what will be gained? It is unlikely the court will allow such persons to testify. And Gravity Defyer does not want its customers harassed by Defendants' attorneys.

Defendants are also incorrect about the attorney-client privilege not potentially applying, in that an attorney could have expressed to Gravity a concern about the advertising in the course of communicating with Gravity and rendering legal advice. The request as written is not limited to third parties as Defendants argue.

**INTERROGATORY NO. 8:**

If YOU are aware of any COMMUNICATION, whether directly to you or on the internet or in any form of social media, from a PERSON who has expressed a fact or an opinion that is contrary to YOUR claims, slogans or testimonials about the nature, characteristics or quality of the good(s) in connection with which the GRAVITY DEFYER mark is used, state in full and complete detail, with the utmost particularity all information regarding each communication. For the

avoidance of doubt, "full and complete detail, with the utmost particularity" includes (without limitation) the substance of the communication, the IDENTITY of the PERSON making the communication, when the communication was made, any response (whether written, oral or electronic) YOU made to the communication, and the IDENTITY of each PERSON having knowledge of the communication and response.

**RESPONSE TO INTERROGATORY NO. 8:**

Gravity Defyer objects to this interrogatory as overly broad in that it is unlimited as to time. Gravity Defyer also objects to the extent any of the information sought is protected from compelled disclosure by attorney-client or work product privileges. Within the past three (3) years, Gravity Defyer and every company has negative statements made about it on the internet, but we can in no way substantiate the authenticity or motives behind those comments and the people who make them, but we do of course realize that they exist.

**Under Armour's Position:**

The interrogatory is not overbroad as to time. According to the PTO web site, YOUR first use was in October, 2006, so the time is no farther back than that.

But the bigger point is that the time period does not matter. In fact, the older the information the more relevant and appropriate it. One does not gain trademark rights from an unlawful use of the mark. *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. Cal. 2007)

The earlier Gravity began its unlawful use—false advertising—the less rights it has and the greater its unclean hands. The question relates to Gravity's claims about its shoe, regardless of when the claim was made. The information (even 4 year old information) is likely to lead to admissible evidence that the claims are false. All communications that express anything contrary to its claims about the G DEFY shoe are relevant and appropriate. There is no objection for relevance.

      The interrogatory does not ask Gravity to substantiate or authenticate or identify the motives behind the comment or the people that made them. That objection is a "strawman." The information requested may lead to admissible evidence that contradict Gravity's claim that the shoe is comfortable and/or relieves pain. It may also lead to admissible evidence why people did not buy the Gravity product. *Gravity acknowledges such comments exist*; it can and should answer the interrogatory, fully and completely.

      An objection for attorney-client and work-product privilege is disingenuous. The question is regarding communications from and to third parties. Even if an attorney communicated back to the third party, the communication is not privileged.

**Gravity's Position:**

      This interrogatory is nearly identical to no. 7, the GRAVITY DEFYER® mark being substituted for the G DEFY® mark. Gravity Defyer uses GRAVITY DEFYER® as its house mark, and for its dress shoes which are not the subject of this lawsuit, while G DEFY® is used on its sports shoes at issue here. Defendants' position is the same as for interrogatory 7. Plaintiff's position is the same as well.

                                              Respectfully submitted,

| | |
|---|---|
| Dated: August 9, 2013 | ROPERS, MAJESKI, KOHN & BENTLEY<br><br>By: /s/ Allan E. Anderson<br>ALLAN E. ANDERSON<br>ARNOLD E. SKLAR<br>ALAN J. HART<br>Attorneys for Defendants/Counter-Claimants UNDER ARMOUR, INC.; FINISH LINE, INC.; FOOT LOCKER, INC.; NORDSTROM, INC.; DICK'S SPORTING GOODS, INC.; CHAMPS SPORTS; SPORT CHALET, INC.; AMAZON.COM, INC.; ZAPPOS IP, INC.; BACKCOUNTRY.COM, INC.; ROGAN'S SHOES, INC.; ROAD RUNNER SPORTS RETAIL, INC.; MONKEYSPORTS, INC.; HOLABIRD SPORTS, LLC; EASTBAY, INC. |
| Dated: August 8, 2013 | LAUSON & TARVER LLP<br><br>By: /s/ Robert J. Lauson<br>ROBERT J. LAUSON, ESQ.<br>Attorney for Plaintiff<br>GRAVITY DEFYER CORPORATION |