**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-01842 JAK (JCGx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 136)

### I. Introduction

Gravity Defyer Corporation ("Plaintiff" or "Gravity Defyer") brought this action in which Under Armour, Inc. ("Under Armour"), certain retailers who are selling Under Armour products, and Does 1 through 9 (collectively, "Defendants") are named as defendants. Second Amended Complaint ("SAC"), Dkt. 68. Plaintiff markets and sells an athletic shoe using the trademark "G Defy®". Under Armour markets and sells several styles of athletic shoes using the trademark "Micro G®". One style of shoes sold under the "Micro G®" trademark is called "Defy". That shoe is advertised and sold under the name "Micro G® Defy." Plaintiff contends that the use of the Under Armour "Micro G®" trademark in combination with the word "Defy" to create the name "Micro G® Defy" has caused consumer confusion. Thus, it contends that certain consumers have believed either that Defendants' shoe is the same as the Gravity Defyer "G Defy®" shoe or has been produced with the permission of Plaintiff. Plaintiff asserts claims for trademark infringement, unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq. Id.*

On April 22, 2014, Defendants filed a Motion for Summary Judgment (the "Motion"). The Court conducted a hearing on the Motion on June 30, 2014, and took the matter under submission. Dkt. 168. For the reasons set forth in this Order, the Motion is DENIED.

### II. Factual Background

Plaintiff and Defendants both engage in advertising and online sales of athletic shoes. Dkt. 156-1, ¶ 35. On February 16, 2010, Plaintiff obtained a federal registration for the trademark "G Defy" in connection with the sale of shoes. Dkt. 68, Exh. A. The federal registration states that the "first use in commerce" of the mark by Plaintiff was on March 15, 2009. *Id.* Plaintiff claims in its advertisements that its "G Defy" shoe can "relieve discomfort," "improve your health," and "energize your life." Dkt. 156-1, ¶ 22. Plaintiff advertises the "G Defy" shoe through various print publications, mail-order catalogs, television and radio programs, social media and online advertisements. *Id.* at ¶¶ 32-33. The retail price of Plaintiff's G Defy shoe ranges from $89 to $145 per pair. *Id.* at ¶ 36.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV13-01842 JAK (JCGx) | Date | July 7, 2014 |
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | |

In 2010, Under Armour obtained a federal registration for the trademark "Micro G" in connection with the sale of shoes. *Id*. at ¶ 1. In 2012, Defendants began selling and advertising the "Under Armour Micro G® Defy" shoe. *Id*. at ¶ 40. Plaintiff contends that the "brand name" of the Under Armour shoe is "Micro G Defy." *Id*. Defendants respond as follows: (i) "Under Armour" is the brand name; (ii) "Micro G®" is the line name; and (iii) "Defy" is the style name. *Id*. Since 2010, Defendants have used the "Micro G®" mark in connection with more than 600 separate "styles" of athletic shoes. *Id*. For example, in addition to the "Under Armour Micro G® Defy" shoe, Under Armour sells the "Under Armour Micro G® Defend" shoe, the "Under Armour Micro G® Gridiron" shoe and the "Under Armour Micro G® Ignite" shoe. Dkt. 136, at 3.

In their advertising, Defendants claim that the "Micro G Defy" shoe contains special soles that provide "more protection underfoot," "turn[] cushioned landings into explosive takeoffs," and "help[] rebound your heel-strike energy, creating forward momentum." Dkt. 156-1, ¶ 23. Defendants advertise the shoe on various media outlets. They also have contracted "to have a link to [Under Armour's] website appear when an internet search was performed for certain key words," including "micro g defy." *Id*. at ¶ 6. Beginning in 2012, when a user entered the search terms "g defy" into an online search engine such as Google, both the Under Armour "Micro G Defy" shoe and Plaintiff's "G Defy" shoe appeared in the search results. Dkt. 156-1, ¶ 26.

Plaintiff contends that, because of the similarity between the names of the products sold by the parties, consumers are likely to be, and have been, confused as to the affiliation, connection or association of Defendants and Plaintiff, and as to the origins of their respective products. Dkt. 68, ¶ 36. As a result, Plaintiff contends it is entitled to "damages including for diverted sales subject to proof at trial." *Id*. at ¶¶ 33, 38.

**III.   Analysis**

   **A.   Legal Standard**

A motion for summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support the claims of the nonmoving party. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); Fed. R. Civ. Proc. 56(e).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(e). In considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. All inferences are to be drawn in the light most favorable to the nonmoving party.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-01842 JAK (JCGx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | |

*See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630-31 (9th Cir. 1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

Trial courts often disfavor deciding trademark cases on summary judgment because "the ultimate issue is so inherently factual." *Click Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001). However, "[a]lthough disfavored in trademark infringement cases, summary judgment may be entered when no genuine issue of material fact exists." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005).

    **B.    Application**

"The core element of trademark infringement is the likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of the products." *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) (internal quotations omitted). "The test for 'likelihood of confusion' requires the factfinder to determine whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Surfvivor Media, Inc.*, 406 F.3d at 630 (internal quotation omitted). "What is expected of this reasonably prudent consumer depends on the circumstances." *Brookfield*, 174 F.3d at 1060.

To analyze likelihood of confusion, courts generally consider the following eight factors: (i) strength of the plaintiff's mark; (ii) whether the goods are related; (iii) similarity of the marks; (iv) evidence of actual confusion; (v) marketing channels; (vi) degree of consumer care in making purchasing decisions; (vii) the defendants' intent; and (viii) likelihood of expansion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979); *Surfvivor Media, Inc.*, 406 F.3d at 631. "The *Sleekcraft* factors are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Brookfield*, 174 F.3d at 1054.

In trademark infringement cases that involve online advertisements and results generated by internet search engines, the Ninth Circuit has held that the following factors may be particularly relevant: (i) strength of the plaintiff's mark; (ii) evidence of actual confusion; (iii) "type of goods and degree of care likely to be exercised by the purchaser"; and (iv) "labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page." *Network Automation, Inc.*, 638 F.3d at 1154.

Plaintiff contends that there are genuine disputes of fact with respect to several of the *Sleekcraft* factors. Each of the factors is discussed below.[1]

---

[1] The fifth *Sleekcraft* factor -- whether the goods were advertised in "convergent marketing channels" -- is "less important when the marketing channel is less obscure." *Network Automation, Inc.*, 638 F.3d at 1151. "Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Id.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-01842 JAK (JCGx) | | Date | July 7, 2014 |
|---|---|---|---|---|
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | | |

    1.    <u>The Strength of Plaintiff's Mark</u>

The strength of a mark is examined to determine the scope of trademark protection to which it is entitled. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). The strength of a mark is determined by conceptual and commercial strength. *Network Automation*, 638 F.3d at 1149. "Marks can be conceptually classified along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Brookfield*, 174 F.3d at 1058. "A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark; it will be afforded the widest ambit of protection from infringing uses." *Sleekcraft Boats*, 599 F.2d at 349. By contrast, "[a] descriptive mark tells something about the product; it will be protected only when secondary meaning is shown." *Id.*[2] "In between lie suggestive marks which subtly connote something about the products. Although less distinctive than an arbitrary or fanciful mark and therefore a comparatively weak mark, a suggestive mark will be protected without proof of secondary meaning." *Id.*

Plaintiff concedes that its "G Defy" mark is "suggestive, connoting that its shoes 'defy gravity.'" Dkt. 145, at 10. A suggestive mark conveys an impression of a product, but requires a prospective purchaser to use some imagination to reach conclusions about the nature of the product. *See, e.g.*, *American Home Prods. Corp. v. Johnson Chem. Co. Inc.*, 589 F.2d 103 (2d Cir. 1978) ("Roach Motel" insect trap is suggestive). Plaintiff's "suggestive" "G Defy" mark is "inherently distinctive." Accordingly, it is protected without proof of secondary meaning. However, "unlike arbitrary or fanciful marks which are typically strong, suggestive marks are presumptively weak." *Brookfield*, 174 F.3d at 1058.

"[P]lacement within the conceptual distinctiveness spectrum is not the only determinant of a mark's strength, as advertising expenditures can transform a suggestive mark into a strong mark." *Id*. However, Plaintiff has not presented evidence showing that its "G Defy" mark has obtained "commercial strength." As to this issue, Plaintiff relies on the declaration of its Co-President and Chief Financial Officer, Paul Coleman. He states that Gravity Defyer has spent "over $30 million in advertising campaigns" since 2009 "to market its products." Coleman Dec'l, Dkt. 149, ¶ 2. He also states that "Gravity Defyer's gross sales from 2012-2013 are approximately $32 million." *Id*. However, he does not specify how much of the advertising expenditures were for the promotion of the "G Defy" shoe as opposed to other products. For example, certain of Plaintiff's advertisements are for its "gcomfort" shoe. *See* Coleman Dec'l, Exh. B, at 11. Nor does he state how much of the $32 million in gross sales was from sales of the "G Defy" shoe.

Commercial strength is based on "actual marketplace recognition." *Brookfield*, 174 F.3d at 1058. Plaintiff

---

Therefore, that both of the products at issue in this action are advertised on the internet does not by itself establish that this factor weighs in favor of Plaintiff. *Id.* Similarly, the eighth *Sleekcraft* factor -- likelihood of expansion -- does not bear substantial weight in this case. Plaintiff presents some evidence that it is "considering expanding" to children shoes. Elnekaveh Dec'l, Dkt. 148, ¶ 6. However, neither party has presented substantial evidence as to the likelihood that Plaintiff will expand in a manner that would increase the competitive overlap between the parties' products.

[2] "To establish that a descriptive term has secondary meaning, the plaintiff 'must show that the primary significance of the term in the minds of the consuming public is not the product but the producer.'" *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th Cir. 1985) (quoting *Kellogg Co. v. Nat'l Biscuit Co.,* 305 U.S. 111, 118 (1938)).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-01842 JAK (JCGx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | |

has not presented any evidence as to marketplace recognition of the "G Defy" mark. Defendants have presented the results of a survey that they commissioned. It found that, among prospective purchasers of athletic shoes, only 1.5% (5 out of 336) were aware of "G Defy" as a brand of athletic shoes. Dkt. 136-1, Anderson Dec'l, Exh. H, at 130. Among prospective purchasers of athletic shoes that claim to protect joints from impact, only .9% (1 out of 108) of respondents were aware of the "G Defy" mark. *Id.* Plaintiff contends that the survey used an improper sample of the population and is unreliable. It argues that "the proper universe is the potential buyers of the *junior user's* goods or services." Dkt. 145, at 13 (italics in original) (citing *Hutchinson v. Essence Commc'n, Inc.*, 769 F. Supp. 541, 559-60 (S.D.N.Y. 1991)). Plaintiff's position is not persuasive. The "appropriate universe should include a fair sampling of those purchasers most likely to partake of the alleged infringer's goods or services." *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 861 (11th Cir. 1983). "Where the senior and junior user's products are of the same kind, the population of consumers is the same." *Hutchinson*, 769 F. Supp. at 546.[3]

Defendants' survey results are admissible, uncontroverted evidence that Plaintiff's "G Defy" mark has not achieved "actual market recognition" among prospective consumers of either Plaintiff's or Defendants products. *Brookfield*, 174 F.3d at 1058. Because the "G Defy" mark is presumptively weak, and insufficient evidence has been presented showing that it has obtained "commercial strength," there is presently no triable issue of fact with respect to the strength of the mark.[4] This factor weighs against Plaintiff's claims.

  2.  <u>Whether the Goods are Related</u>

"The standard for deciding whether the parties' goods or services are 'related' is whether customers are 'likely to associate' the two product lines." *Surfvivor Media, Inc.*, 406 F.3d at 633 (quoting *Dreamwerks Production Grp, Inc. v. SKG Studio,* 142 F.3d 1127, 1131 (9th Cir. 1998)). "The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation*, 638 F.3d at 1150.

Defendants contend that there are four material differences between the "G Defy" and the "Micro G Defy" shoes: (i) "[u]nlike Plaintiff, Under Armour does not claim that its shoes provide any quasi-medical benefits"; (ii) "Plaintiff does not sell shoes in children's sizes, while Under Armour does"; (iii) "Under Armour does not sell dress shoes like Plaintiff does"; and (iv) "Under Armour does not sell shoes with springs." Dkt. 136, at 16. Defendants also contend that their shoes are targeted to 18 to 34-year-olds

---

[3] In *Hutchinson*, "the senior user's mark [was] the title of a magazine, and the junior user's mark [was] the stage name for a rap performer. Accordingly [the court] focus[ed] upon the consumers of the junior user's services." 769 F. Supp. at 546.

[4] Defendants also contend that Plaintiff's mark is weak because several other entities use the word "defy" as part of trademarks used in connection with the sale of apparel, including shoes. Dkt. 136, at 13. Although the existence of other similar marks reduces the likelihood that consumers will be "confused by any two in the crowd," *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp.2d 1107, 1119 (N.D. Cal. 2010), here the suggestive quality of Plaintiff's mark is based on the combination of the letter "G" and the word "defy." That the word "defy" is used in other marks does not weaken the distinctiveness of the mark "G Defy." Nevertheless, for the reasons set forth above, at present there is not a triable issue as to the element of the likelihood of confusion test that is based on the strength of Plaintiff's mark.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-01842 JAK (JCGx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | |

while Plaintiff's shoes are targeted to 35 to 55-year-olds. Dkt. 156-1, ¶ 25.

Despite these differences, there is a genuine issue of fact with respect to whether the ordinary consumer is likely to associate the two products. Both are advertised as "athletic" shoes. Dkt. 136-4, Besselman Dec'l, ¶ 2; Dkt. 148, Coleman Dec'l, ¶ 8. Both are also advertised as providing a "bounce" or a "spring." For example, Plaintiff advertises the "G Defy" shoe as containing a "trampoline sole" that "absorbs shock and propels you forward, leaving you feeling energized and relaxed." Dkt. 148, Coleman Dec'l, Exh. B, at 2. The Under Armour "Micro G Defy" shoe is advertised as containing a sole that is "bouncy" and "turns cushioned landings into explosive takeoffs." Dkt. 147-3, Lauson Dec'l, Exh. C, at 8, 17. And, although Alexander Elnekaveh, the founder and chairman of Gravity Defyer, conceded that the "best age demographic" for the "G Defy" shoe is 35-55-year-olds, he states that the shoe is also sold to 20-35-year-olds, and "the range of age for purchasers of the G Defy athletic shoes is spread." Elnekaveh Dec'l, Dkt. 148, Exh. B, at 4, 6.

For these reasons, although the two products are not identical, there are sufficient similarities between them to raise a triable issue as to whether an ordinary consumer would be "likely to associate" them. *Surfvivor Media, Inc.*, 406 F.3d at 633.

      3.      <u>Similarity of the Marks</u>

Defendants contend that the two trademarks at issue in this case are not similar. Dkt. 136, at 9. They argue that, "[o]nly when the full name of the Under Armour product [is used] does the 'Micro G' name come in proximity with 'Defy.' . . . The full product name – Under Armour Micro G® Defy – does not as a matter of law constitute 'use' of Plaintiff's G Defy® mark" or a similar mark. *Id.* at 10. Plaintiff argues that "it is likely that [consumers] would not be able to differentiate the 'Micro G' as being the footwear technology and 'Defy' as the style, especially when the shoes are advertised as 'Under Armour Micro G Defy' or 'UA Micro G Defy.'" Dkt. 145, at 8. Instead, "[c]onsumers are likely to think that 'Micro' is merely a modifier of 'G Defy,' especially since 'Micro G Defy' typically appeared without the ® between 'Micro G' and 'Defy' in Defendants' advertisements." *Id.*

"Similarity of the marks is tested on three levels: sight, sound, and meaning. Each must be considered as [it is] encountered in the marketplace." *Network Automation, Inc.*, 638 F.3d at 1150. The "full name" of the Under Armour shoe may appear to the ordinary consumer to contain Plaintiff's "G Defy" mark with the addition of the words "Micro," and, at times, "Under Armour." Although Defendants claim that they intended for the "G" to be associated with "Micro" rather than "Defy," there is a triable issue as to whether an ordinary consumer would interpret the words in that manner. Indeed, in many of the advertisements at issue, the "®" does not appear after the term "Micro G." *See, e.g.*, Lauson Dec'l, Exh. C. Particularly in those instances, a consumer may believe that the term "Micro" is intended to modify the phrase "G Defy."

Similarly, the addition of the name "Under Armour" prior to the phrase "Micro G Defy" does not show the absence of a triable issue of fact as to the similarity of the two trademarks. Rather, the use of the "Under Armour" "housemark may serve to create reverse confusion that [Under Armour], and not [Plaintiff], is the source of" the "G Defy" technology. *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1288 (9th Cir. 1992). Indeed, the use of the Under Armour "housemark" in conjunction with Plaintiff's mark may cause consumers to believe that Plaintiff had "licensed, approved or otherwise authorized Defendants'

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-01842 JAK (JCGx) | | Date | July 7, 2014 |
|---|---|---|---|---|
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | | |

use of the ['G Defy'] name." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir. 1988); J. Thomas McCarthy, McCarthy on Trademarks, § 23.43 (4th Ed.) ("A junior user cannot justify its confusing use of another's mark simply by tacking on its own house name. Such a usage may merely suggest to customers that plaintiff has licensed defendant or that the parties are affiliated in some other way.").

In support of their position on this issue, Defendants rely on *Walter v. Mattel, Inc.*, 210 F.3d 1108 (9th Cir. 2000). There, the plaintiff operated an advertisement illustration and product packaging business under the name "Pearl Beach." *Id.* at 1109. She claimed that the use by Mattel of the mark "Pearl Beach Barbie" in connection with its "pool and beach" Barbie doll infringed her trademark. *Id.* She argued that "Mattel's use of its distinctive ['Barbie'] logo in conjunction with the name Pearl Beach implies that Pearl Beach licensed the product." *Id.* at 1111. The court rejected that argument. It did so, in part, because it found that "[t]he appearance of the respective marks . . . negates any similarity." *Id.* The plaintiff's mark "appeared in plain font either above or below a monochromatic, stylized scallop shell with a pearl at the center of the shell. In contrast, Mattel's packaging depicts a bright pink radial sculpture clamshell tilted to one side with the words 'Pearl Beach' in wavy, sandy-textured script with glittery accents over the name 'Barbie.'" *Id.* The facts in the present case are different. The marks at issue here do not contain such distinguishing features. Thus, no evidence has been presented that either of the marks uses a particular font or is accompanied by an image or symbol.

An ordinary consumer may interpret the "Micro G Defy" name as incorporating Plaintiff's "G Defy" mark, preceded by a modifier ("Micro") and Defendants' house mark ("Under Armour"). An ordinary consumer may believe that Under Armour is licensed to sell a smaller version of the "G Defy" shoe or a shoe containing a smaller version of the spring technology in the "G Defy" shoe. For these reasons, there is a triable issue as to the similarity of the marks.

    4.    <u>Evidence of Actual Confusion</u>

Plaintiff presents only de minimis evidence of actual confusion as a result of Defendants' alleged infringement.[5] Plaintiff contends that "[t]he lack of actual confusion evidence can be attributed to Defendants' failure to produce requested documents during discovery" such as customer information that would have allowed it to identify "customers who mistakenly purchased Micro G Defy shoes instead of Plaintiff's G Defy® shoes." Dkt. 145, at 19. Plaintiffs did not argue in response to the Motion that, pursuant to Fed. R. Civ. P. 56(d), the consideration of the Motion should be deferred until they could pursue such

---

[5] At his deposition, Elnekaveh testified that a customer service agent at Gravity Defyer had received a phone call asking "if Under Armour is selling our shoes or using our -- our system, our trampoline system in our shoes or something like that." Dkt. 136-1, Anderson Dec'l, Exh. 8, at 8-9. Plaintiff receives 3,500 to 4,200 phone calls per week. Dkt. 156-1, ¶ 21. The identification of one call reflecting confusion out of several thousand is de minimis. *See Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987) ("[I]n light of both parties' high volume of business, the misdirection of several letters and checks proved insignificant" for proving actual confusion); *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1393 (9th Cir. 1993) (Confusion reflected in seven out of 80,000 listing forms was *de minimis* evidence of actual confusion). Further, this proffered evidence is hearsay.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-01842 JAK (JCGx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | |

discovery.

Although "[a] showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion, . . . actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act." *Network Automation, Inc.*, 638 F.3d at 1151 (internal citations omitted). "Indeed, '[p]roving actual confusion is difficult . . . and the courts have often discounted such evidence because it was unclear or insubstantial.'" *Id.* (quoting *Sleekcraft*, 599 F.2d at 352) (alterations in original). Because of the absence of evidence of actual confusion, this factor weighs in favor of Defendants. However, "this factor is weighed heavily only when there is evidence of past confusion or, perhaps, when the particular circumstances indicate such evidence should have been available." *Sleekcraft*, 599 F.2d at 353. Such circumstances are not present. Accordingly, this factor is not accorded substantial weight.

### 5. Type of Goods and Degree of Care Likely to Be Exercised by Purchaser

"Low consumer care . . . increases the likelihood of confusion." *Playboy Enterprises, Inc. v. Netscape Comms. Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004). "In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353. "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely. Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Id.* (internal citations omitted).

Defendants contend that the "G Defy" shoes are "specialized goods" that are "designed for customers with specialized needs, such as persons who cannot wear ordinary shoes without pain or stress." Dkt. 136, at 15. They also contend that, "[a]s a basic proposition, internet shoppers are careful." *Id.* at 16 (citing *Network Automation, Inc.*, 638 F.3d at 1152). Plaintiff argues that its "[g]eneral claims about the shoes' benefits do not turn [the] shoes into 'specialized' goods." Dkt. 145, at 17. It argues that its shoes are relatively inexpensive and are sold to end users, not to more sophisticated professional or wholesale buyers. *Id.* at 16.

Although consumers with particular health issues, such as knee and back pain, may purchase the "G Defy" shoe because of its "springy" soles, consumers without such health issues may also purchase the shoe because of that feature. As discussed above, Plaintiff advertises the "G Defy" shoe as one that has a "trampoline sole" that "absorbs shock and propels you forward, leaving you feeling energized and relaxed." Dkt. 148, Coleman Dec'l, Exh. B, at 2. Thus, Plaintiff advertises the "G Defy" shoe as one that is comfortable and provides medical and athletic performance benefits. Finally, the shoes are relatively inexpensive products that are sold directly to end users.

Defendants rely on *Network Automation, Inc.*, 638 F.3d at 1152, for the proposition that, in general, internet shoppers are careful. In *Network Automation*, the Ninth Circuit concluded that "the degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace." *Id.* It did not hold that internet shoppers are more careful than other shoppers. 638 F.3d at 1152. Rather, it overturned a "conclusion reached by our court more than a decade ago . . . that Internet users on the whole exercise a low degree of care." *Id.* at 1153. Thus, *Network Automation, Inc.* does not stand for the proposition that internet shoppers are generally careful.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-01842 JAK (JCGx) | | Date | July 7, 2014 |
|---|---|---|---|---|
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | | |

Therefore, for the reasons set forth above, there is a triable issue of fact as to the sophistication of the relevant consumers.

      6.    <u>Defendants' Intent in Adopting the Mark</u>

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft,* 599 F.2d at 354. Plaintiff contends that Defendants "intentionally adopted the brand name 'Micro G Defy' to take advantage of the goodwill created by Plaintiff's branding efforts and direct response marketing to date, and used a variation of the G-Defy name to confuse health conscious buyers who had been exposed to Plaintiff's brand messages and redirected them to their own products." Dkt. 145, at 18. In support of its position, Plaintiff relies on the declaration of Elnekaveh. Dkt. 148. He states, "[g]iven that we actively participate in various conferences and conventions in the shoe industry, and our extensive advertising campaign, Defendants knew about us and our G Defy® mark." *Id.* at ¶ 5.

"Adopting a designation with knowledge of its trademark status permits a presumption of intent to deceive." *Interstellar Starship Srvcs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999). However, Plaintiff did not present evidence to support the conclusion of Elnekaveh that Under Armour knew of the G Defy® mark and intentionally sought to confuse consumers. Nor is this a reasonable inference from the evidence that has been presented. For example, the weakness of the "G Defy" mark, compared to the Under Armour mark, is inconsistent with Plaintiff's position that Under Armour sought to "trad[e] on [its] relatively obscure name." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993). As discussed above, Plaintiff has not presented evidence about how much of its advertising has been conducted in support of the "G Defy" shoe as opposed to other Gravity Defyer products. And, that Under Armour uses the trademark "Micro G" in connection with over 600 styles of shoe -- only one of which is the "Defy" style -- supports an inference that the resulting similarity of the "Micro G Defy" name to Plaintiff's "G Defy" mark was not intentional.

However, the Ninth Circuit has "emphasized the minimal importance of the intent factor." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000). "Importantly, an intent to confuse customers is not required for a finding of trademark infringement." *Brookfield,* 174 F.3d at 1059 (citing *Dreamwerks,* 142 at 1132 ("Absence of malice is no defense to trademark infringement.")). In *GoTo.com,* the court declined to "rummage through the record in a quixotic attempt to determine Disney's intention. For even if we did and concluded that Disney was as innocent as a fawn with *no* intent to copy or appropriate GoTo's logo, it would prove nothing since no such intent is necessary to demonstrate a likelihood of confusion. We need inquire no further into Disney's intent." 202 F.3d at 1208. Accordingly, although this factor weighs in favor of Defendants, it is not accorded substantial weight.

      7.    <u>Labeling and Appearance of the Advertisements and Surrounding Context on the Screen Displaying the Results Page</u>

"In the keyword advertising context the 'likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context.'" *Network Automation, Inc.*, 638 F.3d at 11153 (quoting *Hearts on Fire Co. v. Blue Nile, Inc.*, 603 F. Supp.2d 274, 289 (D. Mass. 2009)). Where an online advertisement appears similar to a protected trademark and does not "clearly identify [its] source"

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-01842 JAK (JCGx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | Gravity Defyer Corporation v. Under Armour, Inc. | | |

or is "unlabeled," it may be "more likely to mislead consumers into believing" that by clicking on the advertisement they will be directed to the product sold under the protected trademark. *Id.* at 1147.

Defendants contend that, "[i]n the internet search results on which Plaintiff's claims are based, the Under Armour product listings are all clearly labeled as being Under Armour products." Dkt. 136, at 18. Plaintiff contends that "Defendants' advertisements were not clearly labeled." Dkt. 145, at 21. For example, nearly all of the advertisements presented by Plaintiff do not include the "®" symbol after the term "Micro G," which, according to Defendants, confirms a separation of the "Micro G" line name from the "Defy" style name. Dkt. 136-2, Exh. K. And, at least one advertisement, by Defendant Finish Line, uses the term "G Defy Men's Running Shoes" without using "Micro" or "Under Armour." *Id.* at 57.

Nearly all of Defendants' advertisements are labeled as "Under Armour Micro G Defy." Plaintiff's advertisements are labeled as "G Defy" or "Gravity Defyer." As a result, a reasonable juror may find that a consumer who enters the term "g defy" into an internet search engine "knows, or should know . . . that a product or web link is not related to that of the trademark holder because the list produced by the search engine so informs him." *Playboy Enterprises, Inc.*, 354 F.3d at 1034-35. However, Plaintiff's theory in this case is that consumers may believe that the "Under Armour Micro G Defy" shoes sold are approved by or connected with Gravity Defyer. Given the overlap in the marks, and that the shoes have certain similarities, that Defendants generally label their shoes as "Under Armour" does not show the absence of a triable issue with respect to whether consumers may infer that there is an association between the competing shoes or the companies that sell them. Accordingly, there is a triable issue as to whether the appearance of the online advertisements and surrounding context would cause an ordinary consumer erroneously to conclude that there is an association between Plaintiff and Defendants.

*      *      *

For the reasons set forth above, there are triable issues of fact as to several of the relevant *Sleekcraft* factors: (i) whether the products are sufficiently related such that an ordinary consumer would be "likely to associate" them. *Surfvivor Media, Inc.*, 406 F.3d at 633; (ii) whether Defendants used Plaintiff's mark or a similar one; and (iii) the degree of care likely to be exercised by ordinary consumers who are seeking to purchase Plaintiff's product. As a result, Defendants have not shown the absence of a genuine issue of material fact with respect to consumer confusion about the parties' products.

**IV.    Conclusion**

For the reasons set forth above, the Motion is DENIED.

**IT IS SO ORDERED.**

:

Initials of Preparer    ak